IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CRAIG THORNTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13-cv-674-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.   INTRODUCTION

Craig Thornton ("Plaintiff"), filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.* His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which the ALJ found Plaintiff not disabled from the alleged onset date of December 16, 2009, through the date of the decision. Plaintiff appealed to the Appeals Council, which rejected his request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 10); Def.'s Consent to Jurisdiction (Doc. 9).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id.*  It may contain both exertional and nonexertional limitations.  *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id.* at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id.*

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla, but less than a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) ("'Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.'") (alteration added).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims."  *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam).

### III.     ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-nine years old at the time of the hearing before the ALJ and his attorney represented at the hearing that Plaintiff had less than a high school education. Tr. 39. His past relevant work experience was as a cement finisher. Tr. 228. Following the administrative hearing and employing the five-step process, the ALJ found at Step 1 that Plaintiff "has not engaged in substantial gainful activity since December 16, 2009, the alleged onset date." Tr. 15. At Step 2, the ALJ found that Plaintiff suffers from severe impairments of "obesity, hepatitis C, degenerative disc and joint disease of the lumbar spine; arthritis of the lumbar spine; degenerative disc disease of the cervical spine; bilateral knee joint degenerative disease; degenerative joint disease of the right hip; fibromyalgia; depressive disorder; and psychotic disorder." *Id.* The ALJ then found at Step 3 that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.* Next, the ALJ found that Plaintiff has the RFC to perform light work with additional limitations. Tr. 17-18.

Following the RFC determination, the ALJ found at Step 4 that Plaintiff could not perform his past relevant work. Tr. 29. At Step 5, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and after consulting with the VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* The ALJ identified the following occupations as examples: "production assembly," "electronics worker," and "assembler electronics accessories." Tr. 30. Accordingly, the ALJ determined that Plaintiff "has not

been under a disability, as defined in the Social Security Act, from December 16, 2009, through the date of th[e] decision." *Id.*

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents two issues for this court's consideration in review of the ALJ's decision: (1) whether "[t]he Commissioner's decision should be reversed because the ALJ failed to properly investigate and develop the record despite direct knowledge of an important factual deficiency discussed at the hearing"; and (2) whether "[t]he Commissioner's decision should be reversed because the ALJ failed to consider [Plaintiff]'s obesity in developing [the] RFC as required by SSR 02-1p." Pl.'s Br. (Doc. 12) at 3. The court will address each argument below.

## V. DISCUSSION

### A. *Whether the ALJ failed to properly investigate and develop the record.*

Plaintiff argues "the ALJ failed in her duty to investigate the conflict between a noted sensory deficit and Dr. Anderson's testimony of the lack thereof, by either recontacting Dr. Anderson for clarification or ordering a new consultative exam" on the question of whether Plaintiff meets Listing 1.04(A). Pl.'s Br. (Doc. 12) at 6. Plaintiff also faults the ALJ for not explicitly stating how much consideration or weight she gave Dr. May's consultative examination. *Id.* at 5.

Listing 1.04(A) provides:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, *motor loss* (atrophy with associated muscle weakness or muscle weakness) accompanied by *sensory or reflex loss* and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (emphasis added). Dr. May, the consulting medical doctor, examined Plaintiff on August 6, 2010, and reported the following sensory exam results: "Light touch and pinprick are intact throughout upper and lower extremities except for below the ankle on the left foot. There is decreased sensation to pinprick and vibration." Tr. 313. Dr. May also reported, among other things, a positive straight-leg raising test. Tr. 312.

At the hearing, Dr. Anderson, the medical expert, began by testifying that Plaintiff's medical records "from a physical standpoint would not meet or equal a listing for disability." Tr. 54. Dr. Anderson then stated there was a lack of evidence that Plaintiff met Listing 1.04(A). He testified:

> A  Evidence is pathology.  [Listing 1.04(A)] says evidence of motor loss, which can be documented of course by physical examination and/or testing of the motor groups by EMT and other scientific methods.  The muscle weakness can be tested by the same situations.  Sensory or reflex loss is something that is documented by physical examinations.  That's not present here.  The positive straight-leg test, sitting and supine, is present here, but that also can be explained by generalized arthritis.
> Q  So the, the part that's missing is just the part that he's not been able to have tested, basically, or has not been tested.
> A  Objective testing.
> Q  Okay.
> A  If you believe, I'm sure that the Judge will consider this.  It's a testimony that would clearly be compatible with this listing.  My, my evaluation is supposed to be based upon the objective testing.
> Q  I, I understand that, but it's not the testing shows that it doesn't exist, it's just the lack of the testing.
> A  There's just no testing, yeah.

> Q  Okay, so we're stating that he doesn't meet the listing basically because the parts that have been tested, like the straight-leg raise and the evidence in the MRI, that's all, consistent with the listing.  The only part that's missing is the part that has not been tested.
> A  Right.
> Q  Okay, so basically being penalized for not having had that, that test.
> A  We certainly don't want to penalize anybody.
> Q  Well, I, I understand, but it's not that it didn't show that it was there, it's just that it doesn't exist.
> A  Right.
> Q  That the test doesn't exist.  But his testimony is consistent with that.
> A  The testimony is consistent with someone with severe problems, yes.

Tr. 56-58.  When questioned by the ALJ, Dr. Anderson testified his review of the examinations revealed no examination reports consistent with neuropathy.  Tr. 58.  Dr. Anderson thereafter explained the finding by Dr. Reardon of "Neurologic: Without focal deficits" was a "shorthand for there's no evidence of any neurological disturbance that, that interferes with motor activity.  So it would suggest no neuropathy, no significant neuropathy was there."  Tr. 59, 354.  The ALJ stated the record as a whole supported Dr. Anderson's testimony, and his opinion was "entitled to great probative weight."  Tr. 28.

"Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."  *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000); 20 C.F.R. § 404.1512 (a)-(f) (2011) (setting out the evidentiary burdens on the claimant and the Commission in determining whether claimant is disabled); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) (claimant has the burden of proving he is disabled, but ALJ has duty to develop a full and fair record).  Here, however, the ALJ was not required to recontact Dr. Anderson or clarify an ambiguity in the record.  *See Wind v. Barnhart*,

133 F. App'x 684, 693 (11th Cir. 2005) (unpublished) (per curiam) (ALJ "not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is unnecessary"). Even though Dr. May reported Plaintiff had decreased sensation below the left ankle, which would suggest sensory loss, Dr. May also reported Plaintiff had no motor loss: "Lower extremity strength is 5/5 bilaterally.  No atrophy.  Upper extremity is bilaterally 5/5, no atrophy."  Tr. 313.  Based on Dr. May's own report that Plaintiff suffered no motor loss or atrophy, Plaintiff fails to "meet *all* of the specified medical criteria" of Listing 1.04(A), therefore he does not meet the listing.  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

As for the ALJ's reliance on Dr. May's opinion, "the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor."  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).  The ALJ is not, however, under a "rigid requirement" to "refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the district court "to conclude that the ALJ considered [the plaintiff's] medical condition as a whole."  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (internal quotation marks and alterations omitted) (alteration added).  The ALJ did not specifically state how much weight she gave Dr. May's report, but the ALJ described and considered the entire scope of Dr. May's report in determining Plaintiff's RFC of light work with additional restrictions. Tr. 21, 310-13.  "Although the ALJ did not explicitly state that [s]he was finding credible

[the physician's] assessment, this determination was implicit from [her] reliance on [the physician's] opinion." *Wind*, 133 F. App'x at 692 (alterations added). The ALJ stated, "[n]o medical source involved in this case has ever opined that the claimant could not work, despite being fully aware of his application." Tr. 28. The other medical records also support the ALJ's determination. Tr. 347 (Plaintiff complained of numbness and tingling, and Rodgers, CNRP, found "Neurologic: Nonfocal with no asterixis"); Tr. 342 (Dr. Danila's rheumatology examination showed "normal range of motion with passive motion. There is normal strength despite some limitation due to pain."); Tr. 353-54 (Dr. Reardon reported "[p]ositive for generalized weakness . . . [g]ait and station normal. Moves all extremities well."); Tr. 472 (during emergency room visit for cut on arm, Plaintiff was within normal limits for "extremity sensation, strength, appearance and tone normal bilaterally, edema absent, pulses normal bilaterally"). The ALJ stated "at least five different medical sources examined [Plaintiff], and none found that he suffered listing level limitation" under Listing 1.00 and its subdivisions. Tr. 15-16.

The record before the ALJ was sufficient and additional expert testimony was unnecessary. Consequently, the ALJ was not required to recontact Dr. Anderson or develop the record further. The ALJ's decision that Plaintiff did not meet Listing 1.04(A) was based on substantial evidence in the record.

### B. Whether the ALJ failed to consider Plaintiff's obesity in determining the RFC.

Plaintiff asserts "the Commissioner's decision in this case should be reversed because, although the ALJ repeatedly stated the presence of obesity, her decision never

addressed the possible effects of [Plaintiff]'s obesity on his RFC given the other severe impairments of his spine and joints in accordance with SSR 02-1p." Pl.'s Br. (Doc. 12) at 6-7.

Under Social Security Ruling 02-1p, an impairment in combination with obesity may meet a listing, especially for "musculoskeletal, respiratory, and cardiovascular impairments." SSR 02-1p, 2002 WL 34686281, at *5 (2002). Plaintiff's height and weight correlate to a body mass index ("BMI") above the 30 percent threshold for obesity. Tr. 16; http://www.nhlbi.nih.gov/guidelines/obesity/BMI/bmicalc.htm (last visited Oct. 20, 2014). But weight, alone, is not enough to establish a severe impairment on the ability to work.

> There is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment. Neither do descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity) establish whether obesity is or is not a 'severe' impairment for disability program purposes. Rather, we will do an *individualized assessment of the impact of obesity on an individual's functioning* when deciding whether the impairment is severe.

SSR 02-1p, 2002 WL 34686281, at *4.

In assessing RFC, SSR 02-1p provides that obesity might limit "functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. . . . climbing, balance, stooping, and crouching. . . . ability to manipulate . . . tolerate extreme heat, humidity, or hazards . . . ." *Id.* at *6. Fatigue caused by obesity "may affect the individual's physical and mental ability to sustain work activity," and "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.* The

ruling states, "we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *Id.* at *7.

The ALJ did not expressly refer to SSR 02-1p, but in determining whether Plaintiff met the subdivisions of Listing 1.00, the ALJ did state:

> The listing also requires the undersigned to consider if the claimant's obesity may aggravate musculoskeletal impairment, including pain, such that there is further limitation resulting in effective ambulation or ineffective gross and fine manipulation. *The record does not reflect much concern for the claimant's obesity.* However, he is approximately 5'4" and over the course of the record, he weighed between 178 and 190 lbs. At least one doctor commented on his obesity. However, after carefully considering the record, the undersigned finds that the evidence does not suggest that a combination of the claimant's impairments, including obesity and his nonsevere impairments, causes listing level limitation in musculoskeletal functioning.

Tr. 16 (emphasis added). Consistent with the ALJ's finding that "[t]he record does not reflect much concern for the claimant's obesity," the medical reports identify Plaintiff's weight but do not attribute limitations to Plaintiff's excess weight. The ALJ described those records, including Plaintiff's weight at least eight times, in determining Plaintiff's RFC. Tr. 21, 22-26, 311, 342, 380, 383, 395, 412, 417, 439.

In addition, as the ALJ pointed out, at the hearing Plaintiff testified the conditions that most interfered with his ability to work were his auditory hallucinations, followed by his breathing, and then the pains in his head. Tr. 26, 42-43, 45-46. Plaintiff did not name obesity as a condition contributing to his physical limitations during his hearing with the ALJ. *Cf. James v. Barnhart*, 177 F. App'x 875, 878 n.2 (11th Cir. 2006) (unpublished) (per curiam) (noting ALJ did not err by failing to find obesity a severe impairment where, during her own testimony, plaintiff did not claim her obesity was a functional

impairment, and only one doctor attributed claimant's shortness of breath to obesity and did not elaborate on the matter). Even assuming the ALJ erred by not specifically referring to SSR 02-1p or discussing the effect of Plaintiff's obesity in determining his RFC, Plaintiff fails to show how he was harmed by it. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) (applying harmless error analysis in review of social security disability determination); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); *McIntire v. Colvin*, 2:12CV820-WC, 2013 WL 6596955, at *6 (M.D. Ala. Dec. 16, 2013) (collecting cases and concluding claimant was entitled to no relief when claimant failed to explain how her obesity caused further limitations than those the ALJ found and claimant identified no reliable medical opinions supporting limitations resulting from her obesity beyond those stated in her RFC).

The ALJ considered the effect of Plaintiff's obesity in determining the RFC. Substantial evidence on the record supports the ALJ's decision that Plaintiff's obesity did not cause him to have limitations beyond light work with a sit/stand option and other restrictions, and Plaintiff fails to show how he was harmed by the ALJ's decision.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 23rd day of October, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE